## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C.<br>and NAGRASTAR LLC, | ) )  ) | Case No.   3:19cv605 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| MELVIN CRAWLEY JR. and MIRACLE<br>MEDIA LLC, individually and<br>collectively d/b/a MIRACLE BOX MEDIA, | ) ) ) ) | |
| Defendants. | ) ) | |

_____/

## PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs DISH Network L.L.C. ("DISH") and NagraStar LLC ("NagraStar") (collectively with DISH, "Plaintiffs") bring this action against Defendants Melvin Crawley Jr. and Miracle Media LLC, individually and collectively d/b/a MiracleBox (collectively "Defendants"[1]), and state as follows:

### PARTIES

1.     Plaintiff DISH Network L.L.C. is a Colorado limited liability company with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

2.     Plaintiff NagraStar LLC is a Colorado limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112.

---

[1] All Defendants are acting jointly in furtherance of a common scheme to steal DISH programming and resell it to unauthorized users.  (*See infra* ¶¶ 7-12.)  Defendants acting jointly are collectively referred to herein as "Defendants" where appropriate.  Individual defendants are referred to singularly by specific name where appropriate.

3.     Upon information and belief, Defendant Melvin Crawley Jr. (hereinafter "Crawley"), in an individual residing in Glen Allen, Virginia and is the controlling member, officer and director of Defendant Miracle Media LLC.

4.     Defendant Miracle Media LLC (hereinafter "Miracle Media") is a limited liability company organized under the laws of the State of Virginia, with its principal place of business listed as 8191 Brook Rd., Richmond, Virginia 23227.  According to Commonwealth of Virginia State Corporation Commission website (https://sccefile.scc.virginia.gov/Business/S565980; last visited on August 6, 2019), Miracle Media LLC's status is listed as "Canceled".

5.     Upon information and belief, Crawley manages and oversees the day-to-day operations and makes final decisions concerning the business of Miracle Media and the MiracleBox d/b/a.  Crawley is believed to authorize, control, participate in, and receive direct financial benefits from the infringing activities of Miracle Media and MiracleBox as alleged herein.  Upon information and belief, the infringing acts that Crawley engages in as an agent of Miracle Media and MiracleBox are within the course and scope of his agency.

6.     Upon information and belief, there is a unity of interest and ownership between Crawley, Miracle Media and MiracleBox, preventing them from functioning as separate entities.  It would be inequitable to allow Miracle Media to assert a distinction between that entity (to the extent it cures its defunct status) and Crawley.

7.     Upon information and belief, Miracle Media was formed by Crawley for the purpose of protecting him from judgment and in an effort to secrete monies earned by the infringing conduct alleged herein.

8.     Upon information and belief, Crawley, acting as manager of Miracle Media, or in other capacities, failed to respect the separate identity of Miracle Media and has exercised dominion

2

and control over Miracle Media such that the separate personalities of the entities and Crawley no longer exist, and has improperly used the corporate form to commit an injustice, or to gain an unfair advantage by conducting business in the name of Miracle Media. Crawley has used Miracle Media for purposes of committing the illegal acts complained of herein. The recognition of the business entity would therefore result in an injustice to Plaintiffs.  Upon information and belief, actions and circumstances that warrant piercing the corporate veil include but are not limited to the following:

      a.   Crawley has improperly commingled assets with and among Miracle Media;

      b.   Crawley drained Miracle Media of substantial sums of money thereby undercapitalizing it;

      c.   Crawley and Miracle Media caused valuable assets, property, rights and/or interests to be transferred to each other without adequate consideration;

      d.   Crawley and Miracle Media failed to follow formalities of corporate existence;

9.     This Court should consider Crawley and Miracle Media as one entity or "alter egos" and enter an order piercing the corporate veil of Miracle Media, to the extent that entity still exists.

10.     Any judgment pursuant to Plaintiffs' request for relief should be rendered joint and several against Crawley and Miracle Media.

## JURISDICTION & VENUE

11.     Plaintiffs assert claims under 47 U.S.C. §§ 605(a) and 605(e)(4).  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

12.     Defendants reside in, conduct business in, and engage in the wrongful conduct at issue in this Complaint in Virginia, and therefore are subject to this Court's personal jurisdiction.

13.     Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1) because Crawley resides in this judicial district, § 1391(b)(2) because a substantial part of the events giving rise to

Plaintiffs' claims occurred in this judicial district, and § 1391(b)(3) because Defendants are subject to personal jurisdiction in this judicial district.

## NATURE OF THE ACTION

14.     Defendants created a pirate streaming television service they have branded "MiracleBox".  Defendants traffic in device codes and set-top-boxes ("STBs") designed to enable access to the MiracleBox pirate streaming service, which includes television channels and programming that were received without authorization from DISH's satellite service and were subsequently retransmitted without authorization on the MiracleBox pirate streaming service. Defendants are believed to engage in or work in concert or participation with other persons that are receiving DISH's channels for retransmission on the MiracleBox pirate streaming service without authorization.  Defendants' actions violate the Federal Communications Act ("FCA"), 47 U.S.C. §§ 605(a) and 605(e)(4).

## DISH'S SATELLITE TELEVISION PROGRAMMING

15.     DISH is the fourth largest pay-television provider in the United States and delivers programming to millions of subscribers nationwide via a direct broadcast satellite system.

16.     DISH uses high-powered satellites to broadcast, among other things, movies, sports, and general entertainment services to consumers who have been authorized to receive such services after paying a subscription fee, or in the case of a pay-per-view movie or event, the purchase price.

17.     DISH contracts for and purchases rights for the programming that is distributed on its platform from network affiliates, motion picture distributors, pay and specialty broadcasters, cable networks, sports leagues, and other holders of programming rights.  DISH's programming includes hundreds of premium movie, sports, educational, travel, and entertainment channels including, without limitation:  USA; CMDY; LIFE; LMN; FOOD Network; DIY; HGTV;

COOK; A&E; FYI; HISTORY; BET; ESPN2; FOX S1; NFL Network; CBSSN; VH1; DISXD; DISCOVERY; TLC; FXNews; MSNBC; TRU TV; SHOTIME-E; SHOTO; EWSTN; STARZ; ARTMV; MURTV; NBN; GEOTV; ARY DI; DUNYA; ARY NW; EXPNW; ZEETV; SET; SAB; SETMX; AAJTX; WILLOW; ASTHA; WLXTR; CHNLI; and TMNDO (collectively "the DISH Programming").

18.    NagraStar provides smart cards and other proprietary security technologies that form a conditional access system used to authorize receipt of DISH's satellite programming.

19.    The DISH programming is scrambled prior to being transmitted to a number of satellites located in geo-synchronous orbit above Earth.  The satellites relay the encrypted DISH signal back to Earth where it can be received by authorized DISH subscribers that have the necessary equipment, including a DISH receiver and NagraStar smart card.  The receiver and smart card convert DISH's encrypted satellite signal into viewable programming that can be displayed on the attached television of an authorized DISH subscriber.

## DEFENDANTS' WRONGFUL CONDUCT

20.    Through various websites, including https://miracleboxmedia.com and www.theykilledcable.com ( the "MiracleBox Domains"), Defendants have advertised and sold device codes and STBs to access servers that are used to stream unauthorized television programming on the MiracleBox pirate streaming service, including the DISH Programming.



21.    To entice the purchase of hardware and/or device codes from MiracleBox, Defendants promise "Unlimited Premium HD Movies, TV Shows, Sports & PPV" with "NO Monthly Fees & No Contracts" – all for the one time purchase price of $399 (in the case of the MiracleBox STB v3.0):

Which Price Would You Rather Pay?

Cable and Satellite

$2,400 Per Year

Available Movies, Shows55%

55%

Miracle Box 2.0

$399 One Time

Available Movies, Shows100%

100%

Waiting on TV shows to show up on Netflix? Wait no longer watch them now!

Unlimited Movies, TV Shows, Sports, & PPV, Unlimited Music, Games, & More!

NO Monthly Fees! & No Contracts

22.    The MiracleBox STBs and MiracleBox pirate streaming service is, and has been retransmitting the DISH Programming without authorization from DISH. The DISH Programming was received from DISH's satellite television service without authorization. The DISH Programming was distributed to MiracleBox customers for Defendants' benefit and the benefit of

6

MiracleBox customers who were not entitled to receive the DISH Programming. Messages transmitted as part of DISH's satellite television signals were observed on the DISH Programming retransmitted on the MiracleBox STBs and MiracleBox pirate streaming service, confirming that the DISH Programming originated from DISH subscriber accounts and DISH's satellite broadcasts.

23.     Defendants openly advertised on the MiracleBox Domains that their STBs and MiracleBox pirate streaming service provided access to premium content, including the DISH Programming:





24.     Upon information and belief, Defendants directly engage in, aid and abet, or are acting within the scope of a principal-agent relationship with other persons that are receiving and retransmitting the DISH Programming through the MiracleBox STBs and on the MiracleBox pirate streaming service.

25.     Defendants' wrongful conduct has caused irreparable harm to Plaintiffs for which there is no adequate remedy at law.  Defendants' acts have resulted in providing an unknown number[2] of Defendants' MiracleBox customers with access to the DISH Programming, resulting in an unknown amount of revenues being diverted from Plaintiffs and an unknown amount of profits being received by Defendants.  In addition to lost revenue and Defendants' profits, Defendants' actions cause harm to Plaintiffs in the form of loss of reputation and goodwill.

## CLAIMS FOR RELIEF

### (Count I – Violation of the Federal Communications Act, 47 U.S.C. § 605(a) – On Behalf    of DISH)

26.     DISH repeats and realleges the allegations in paragraphs 1- 25 above.

27.     Upon information and belief, Defendants or persons acting in concert or participation with Defendants received DISH's transmissions of the DISH Programming and retransmitted the DISH Programming on the MiracleBox STBs and MiracleBox pirate streaming service, without having authorization from DISH and for their own benefit and their subscribers, in violation of 47 U.S.C. § 605(a).

28.     Defendants' sale and distribution of MiracleBox STBs and device codes for accessing the MiracleBox pirate streaming service assists end users to receive the DISH Programming or the content therein, without having authorization from DISH and for the benefit of the MiracleBox end users, in violation of 47 U.S.C. § 605(a).

---

[2] Crawley has admitted to having "over 100,000 customers" to investigators of DISH during undercover product and service purchase, product support and other investigatory pretext calls.  Crawley further admitted that "about 20,000" of those customers for his MiracleBox STBs and/or MiracleBox pirate streaming service came from SetTV – another pirate streaming service providing unauthorized access to DISH Programming.  Plaintiffs previously filed suit against the operators of SetTV in the Middle District of Florida, where the Court issued Temporary Restraining and Preliminary Injunction Orders shutting down the service and freezing those Defendants' assets and accounts.  *DISH Network L.L.C. v. SET Broadcast LLC*, No. 8:18-cv-01334-VMC-AAS, Dkt. 15 (M.D. Fla. June 4, 2018).

29.     Defendants have been violating 47 U.S.C. § 605(a) willfully and for purposes of commercial advantage and private financial gain.  Defendants knew or should have known their actions are illegal and prohibited.

30.     Defendants' violations cause damage to DISH in an amount to be proven at trial. Unless enjoined by the Court, Defendants will continue to violate 47 U.S.C. § 605(a).

**(Count II – Violation of the Federal Communications Act, 47 U.S.C. § 605(e)(4) – On Behalf of All Plaintiffs)**

31.     Plaintiffs repeat and reallege the allegations in paragraphs 1- 25 above.

32.     Defendants sell and distribute MiracleBox STBs and device codes used for accessing the MiracleBox pirate streaming service in violation of 47 U.S.C. § 605(e)(4).   The MiracleBox STBs and device codes are knowingly provided by Defendants for purposes of enabling customers' access to the servers that are used to stream the television programming on the MiracleBox pirate streaming service, including the DISH Programming.   Defendants are engaged in the sale and distribution of MiracleBox STBs and device codes for the MiracleBox pirate streaming service with knowledge, or reason to know, that these devices are intended to be used in receiving the DISH Programming or its content, without having authorization from DISH and for the benefit of the MiracleBox end users, which is activity that violates 47 U.S.C. § 605(a).

33.     Defendants violated 47 U.S.C. § 605(e)(4) willfully and for purposes of commercial advantage and private financial gain.  Defendants knew or should have known their actions are illegal and prohibited.

34.     Defendants' violations cause damage to Plaintiffs in an amount to be proven at trial. Unless enjoined by the Court, Defendants will continue to violate 47 U.S.C. § 605(e)(4).

## PRAYER FOR RELIEF

WHEREFORE, DISH prays for judgment against Defendants as follows:

A.    For permanent injunctive relief under 47 U.S.C. § 605(e)(3)(B)(i) restraining and enjoining Defendants, and any agent, servant, employee, attorney, or other person acting in active concert or participation with any of the foregoing that receives actual notice of the order, from:

1.    receiving or assisting others in receiving DISH's satellite transmissions or the television programming contained therein without authorization, including transmitting DISH television programming or its content over the Internet or by other means, or distributing DISH television programming or its content to persons not authorized by DISH to receive or view that programming or channel; and

2.    manufacturing, assembling, modifying, importing, exporting, selling, or distributing STBs, devices, subscriptions, applications, codes, or connections related to the MiracleBox pirate streaming service, or any other device or equipment that is intended for receiving or assisting in receiving DISH's satellite transmissions or the television programming contained therein without authorization;

B.    For an order authorizing Plaintiffs to take possession of and destroy all MiracleBox STBs, devices, subscriptions, applications, and device codes, as well as all streaming devices, technologies, tools, software, products, components, or parts thereof in the custody or control of Defendants that the Court has reasonable cause to believe were involved in Defendants' violations of the FCA, pursuant to 47 U.S.C. § 605(e)(3)(B)(i);

C.    For an order requiring removal of Defendants' advertisements and social media pages concerning MiracleBox STBs, the MiracleBox pirate streaming service, or any other device

or service that provides, or assists in providing unauthorized access to DISH programming or content, and an order requiring the transfer of the MiracleBox Domains to Plaintiffs;

D.      For an order directing Defendants to preserve and turn over to Plaintiffs all hard copy and electronic records concerning MiracleBox STBs, devices, subscriptions, applications, device codes, or any similar product or service, including manufacturers, exporters, importers, dealers, or purchasers of such products or services, or any persons involved in receiving DISH's satellite transmissions or the programming contained therein without authorization;

E.      Award DISH the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $10,000 for each violation of 47 U.S.C. § 605(a), under 47 U.S.C. § 605(e)(3)(C)(i), and to increase the amount by $100,000 for each violation, in accordance with 47 U.S.C. § 605(e)(3)(C)(ii);

F.      Award Plaintiffs the greater of their actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $100,000 for each violation of 47 U.S.C. § 605(e)(4), under 47 U.S.C. § 605(e)(3)(C)(i);

G.      Award Plaintiffs their costs, attorney's fees, and investigative expenses under 47 U.S.C. § 605(e)(3)(B)(iii);

H.      For a full and accurate accounting of all profits and other benefits received by Defendants as a result of the wrongful conduct described herein;

I.      For pre and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law; and

J.      For such additional relief as the Court deems just and equitable.

Dated:  August 19, 2019.

Respectfully submitted,


_____*/s/ Bradshaw Rost*_____
Bradshaw Rost, Esq., VSB Bar #27134
**Tenenbaum & Saas, P.C.**
4504 Walsh Street, Suite 200
Chevy Chase, MD 20815
(301) 961-5300 – Tel
(301) 961-5395 – Fax
brost@tspclaw.com

Chad Hagan  (*pro hac vice* to be filed)
Christopher Craven  (*pro hac vice* to be filed)
**Hagan Noll & Boyle, LLC**
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, TX 77024
(713) 343-0478 – Tel
(713) 758-0146 – Fax
chad.hagan@hnbllc.com
christopher.craven@hnbllc.com
*Attorneys for Plaintiffs*